HON. ELI GINGOLD, County Attorney, Onondaga County
HON. ROBERT A. SMALL, Town Attorney, Clay
This is in response to your joint inquiry directed to this office concerning the allocation of sales tax revenues within Onondaga County. The specific facts of your question are as follows:
By a resolution adopted in 1968, the Onondaga County Legislature imposed a 3% county sales tax throughout the county and determined that the revenue from such tax would be distributed in these amounts: 34% to Onondaga County, 39% to the City of Syracuse and 27% to the various towns and villages in the county. This resolution, adopted pursuant to the language of section 1262
of the Tax Law, also declared that the revenues to be allocated to the areas in the county outside of the City of Syracuse would be "in proportion to their respective populations, determined in accordance with the latest decennial federal census or special population census taken pursuant to section twenty of the general municipal law * * *."
In 1969 section 1262(c) of the Tax Law was amended by chapter 1023 of the Laws of 1969 to provide that a special population census to be utilized for purposes of that section must include the entire area of the county. Recently a special population census pursuant to section 20 of the General Municipal Law was conducted in the Town of Clay in Onondaga County, covering only the area of that town. The results indicated an increase in population in the town, which would entitle the town to additional sales tax revenue if the census is recognized by Onondaga County in their computation of the amount of money to be credited to each town and village in the county.
The amount of money credited to each town in the county is determined by dividing the population of each town by the total population of all towns in the county and then multiplying this fraction by the percentage of estimated sales tax revenue which is allocated to the area of the county outside of the City of Syracuse.
The Town of Clay contends that section 1262 of the Tax Law has at all times provided two alternative means for the distribution of county sales tax revenues. One is according to the statute (§ 1262) and subject to statutory change, while the other is by legislative agreement. The town contends that the latter alternative was chosen by Onondaga County and that the terms of the agreement are embodied in the 1968 resolution which is still in effect, and further contends that the agreement provides that the means of computing the revenue share allocable to each town and village is to be based on the decennial census or any
special census pursuant to section 20 of the General Municipal Law. Thus, the Town of Clay contends that the results of the recent townwide special population census should be recorded for purposes of computing the quarterly allocation of revenues to the towns and villages in the county, and that since the official count was reported prior to the third quarter of 1975, an additional allocation to the Town of Clay should be forthcoming.
Onondaga County, on the other hand, contends that the recent special population census taken for the Town of Clay does not entitle the town to an additional allocation of sales tax revenues, and that in any event such amount should only be credited beginning on the year period commencing January 1, 1976.
You jointly inquire whether the Town of Clay is entitled to the additional allocation and, if so, in what way or ways may such allocation be given to the town.
Section 1262(c) of the Tax Law, relating to the disposition of revenues from sales taxes imposed by counties, provides, in pertinent part, as follows:
 "(c) Amounts not set aside for county purposes or educational purposes shall, except as otherwise provided in this section, be allocated quarterly to the cities and the area in the county outside the cities in proportion to their respective populations, determined in accordance with the latest decennial federal census of special population census taken pursuant to section twenty of the general municipal law completed and published prior to the end of the quarter for which the allocation is made, which special census must include the entire area of the county, or in such other proportion as may be agreed upon by the elective governing body of the county and of each of the cities in the county with the approval of the state comptroller, provided however, that where a county does not contain a city, such amounts shall be so allocated to the entire area of the county. Any such agreement or approval thereof may be for a limited period." (Emphasis supplied.)
A reading of the above-quoted portion of the statute indicates that the words "or in such other proportion" relate to the distribution of money between the cities and the area of the county outside the cities. Those words do not, we believe, apply to the standard used to determine population distribution in the various towns and villages in the area outside of the cities in the county. Our interpretation is supported by the fact that the statute also requires that in the case of a county which does not contain a city revenues shall be so allocated to the entire area of the county, i.e., allocated in proportion to the respective population of the towns as determined by the latest decennial Federal census or special population census which includes the entire area of the county.
We do not feel that the statutory invitation to the county legislature to allocate revenues between the cities in the county and the areas outside the cities "in such other proportion as may be agreed upon" includes authority for a county to adopt its own standard for determining the population within the county, which standard would be subject to change when one of the towns in the county conducted a census which was not county wide.
The 1969 amendment requiring that a special population census taken pursuant to section 20 of the General Municipal Law "must include the entire area of the county" indicates that regardless of which proportional distribution of revenues between the City of Syracuse and the area outside the city is agreed to by the county legislature (and approved by the State Comptroller), the population figures upon which the allocations are computed must be based upon either the latest Federal decennial census or a county-wide special population census.
Therefore, a resolution by Onondaga County which would permit a special census covering less than the entire area of the county to be used as a population determinant for allocating sales tax revenues would conflict with the provisions of section 1262(c). Local taxation is a matter of State concern (County SecuritiesInc. v. Seacord, 278 N.Y. 34), and localities may not, therefore, adopt local laws inconsistent with State statutes on the subject (see 1970 Atty. Gen. [Inf.] 74). Municipal Home Rule Law, § 10(1)(ii)(a)(8), requires that local laws of counties relating to local non-property taxes shall be consistent with laws enacted by the Legislature. Although in this instance we are dealing with a resolution of a county rather than a local law, the conclusions reached herein are nevertheless applicable.
We conclude, therefore, that the County of Onondaga is not authorized or required to allocate additional sales tax revenues to the Town of Clay on the basis of population figures as determined by a town-wide special census taken in the Town of Clay pursuant to section 20 of the General Municipal Law. This conclusion renders moot the second part of your inquiry relating to the possible means of distributing any additional allocation.